UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
KARLA RAMOS, on behalf of herself, individually, and         **CLASS ACTION**
all other persons similarly situated,         **COMPLAINT**

                        Plaintiff,

    -against-

CONTRACT PHARMACAL CORP.,         *Jury Trial Demanded*

                        Defendant.
------------------------------------------------------------------------X

        Plaintiff, KARLA RAMOS ("Plaintiff"), on behalf of herself, individually, and all other persons similarly situated, by and through her attorneys, the Law Office of Peter A. Romero PLLC, complaining of the Defendant, CONTRACT PHARMACAL CORP. ("Defendant"), alleges as follows:

## NATURE OF THE ACTION

    1.    Plaintiff brings this action against Defendant to seek redress for violations of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA") and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq*. (the "NYSHRL"). Plaintiff seeks injunctive and declaratory relief, compensatory damages, liquidated damages, punitive damages, attorneys' fees and other appropriate relief pursuant to the FMLA and the NYSHRL.

    2.    Plaintiff was employed by Defendant as a "Manual Worker" within the meaning of New York Labor Law ("NYLL") § 190(4) at Defendant's manufacturing facility located at 1324 Motor Parkway, Islandia, New York 11749.

    3.    Defendant paid Plaintiff and other individuals who work and/or have worked for Defendant in the State of New York in hourly-paid positions on a biweekly basis.

4. As a result, Defendant violated the requirement that manual workers be paid within seven days after the end of the workweek in accordance with NYLL § 191(1)(a), and the requirement that employees "be paid on the regular pay day" under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Plaintiff brings the First and Second Claims for Relief under the FLSA § 216(b) and NYLL § 198, respectively, for liquidated damages and interest, arising from Defendant's violation of the FLSA and NYLL § 191.

5. Because Plaintiff and her co-workers are similarly situated and the statute of limitations is continuing to run against them until they file a consent to join this action, Plaintiff seeks certification of this matter as a collective action and leave to notify the "FLSA Collective," as defined as follows:

> All individuals who work and/or have worked for Defendant in the State of New York in hourly-paid positions such as machine operators, forklift operators, factory workers, porters, set-up technicians, technicians, and packaging inspectors at any time in the three years prior to the filing of this Complaint.

6. Because the harm suffered by Plaintiff and her co-workers was widespread, Plaintiff brings this case as a class action and will seek certification under Federal Rule of Civil Procedure 23 ("Rule 23") for the following "Class" or "Class Members":

> All current and former employees of Defendant who work and/or worked for Defendant in the State of New York in hourly-paid positions such as machine operators, forklift operators, factory workers, porters, set-up technicians, technicians, and packaging inspectors at any time during the six years prior to the filing of this Complaint until the date of judgment in this action.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

8. This Court may exercise supplemental jurisdiction over Plaintiff's state law claims as authorized by 28 U.S.C. § 1367(a).

9. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims complained of herein occurred within the Eastern District of New York and 28 U.S.C. § 1391(b)(2) because Defendant resides within the Eastern District of New York.

## THE PARTIES

10. Plaintiff is an adult female resident of the State of New York.

11. At all times relevant, Plaintiff was an "employee" within the meaning of the FMLA and NYSHRL.

12. At all times relevant, Plaintiff was an "employee" as within the meaning of 29 U.S.C. § 203(e)(1) and NYLL §§ 190(2), 651(5).

13. Defendant is a domestic business corporation engaged in the manufacture and distribution of pharmaceutical products and supplements.

14. At all times relevant, Defendant employs 50 or more employees during at least 20 workweeks in each calendar year and was and still is an "employer" subject to the FMLA and the NYSHRL. Plaintiff worked for Defendant at least 12 months and at least 1,250 hours over the 12-month period preceding her need for leave.

15. At all times relevant, Defendant was and still is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d) and NYLL § 190(3).

16. At all relevant times, Defendant was subject to the requirements of the FLSA because it had annual gross revenue of at least $500,000, was engaged in interstate commerce and had employees handling, selling, or otherwise working on goods or materials that have been moved

in or produced for commerce. Defendant's employees were engaged in the manufacture, packaging and shipping of pharmaceutical compounds and supplements, used machines, forklifts, tools, equipment, mops, brushes, solvents, cleaning supplies and other materials, many of which originated in other states.

## FACTUAL ALLEGATIONS
### *Violations of the FLSA and NYLL*

17. Defendant is a company that specializes in the production and shipment of various pharmaceutical products at its factory in Islandia, New York

18. Plaintiff commenced employment with Defendant as a non-exempt, hourly-paid packaging inspector on or about May 4, 2020.

19. Plaintiff's duties included monitoring packaging, inspecting packaging lines and equipment, and inspecting product prior to shipment. The performance of Plaintiff's duties required prolonged standing, lifting, climbing, bending, and moving or carrying heavy materials.

20. During her employment with Defendant, more than 25% of Plaintiff's hour worked were spent performing physical tasks.

21. At all times relevant to the Complaint, Plaintiff was a "manual worker" within the meaning of NYLL § 190(4).

22. Plaintiff was entitled to payment of her wages earned on a weekly basis and within seven calendar days after the end of the workweek in which the wages were earned, in accordance with NYLL § 191(1)(a).

23. Defendant, however, failed to pay Plaintiff her wages within seven calendar days after the end of the workweek, in accordance with NYLL § 191(1)(a). Instead, Defendant paid Plaintiff her wages every two weeks in violation of NYLL § 191(1)(a).

24. Every time that Defendant failed to pay Plaintiff and Class Members their wages earned within seven days of the end of the workweek, Defendant deprived them of the use of money to which they were legally entitled.

25. As a result of Defendant's failure to timely pay their wages, Plaintiff and Class Members lost the time value of money.

26. Plaintiff and Class Members are manual workers who depend upon their wages for sustenance and suffer harm that is particularly acute when their wages are delayed, and they are temporarily deprived of their earned wages.

27. Each time Plaintiff and Class Members received late compensation for the work that they performed, Defendant underpaid them for the work they performed.

28. Every time that Defendant failed to pay Plaintiff and Class Members their wages earned within seven days of the end of their workweeks, Defendant deprived them of the use of money that belonged to them.  As a result, Plaintiff and Class Members were unable to do those things that every person does with their money, such as paying bills or buying goods that they needed or wanted to buy.

29. By way of example, these delayed wages prevented Plaintiff and Class Members from spending money earned on a host of everyday expenses and to provide for their basic needs including, but not limited to, purchasing food and groceries, rent or mortgage payments, gas or heating oil, utilities, medical supplies and services, insurance, automobile payments, fuel for vehicles, education tuition and expenses, daycare or childcare, public transportation, and other basic living expenses.

30. Additionally, Defendant's delayed payment of wages forced Plaintiff and Class Members to forgo purchasing goods and services until a later time after their receipt of their late paid wages. Because of inflation, being an ever increasing scourge throughout the Covid-19 pandemic and recent events, Plaintiff and Class Members were required to pay increased prices for the goods and services that they otherwise would have purchased at an earlier date were their wages lawfully paid on a weekly basis.

31. By retaining these wages earned beyond the timeframes set by NYLL § 191, Defendant benefitted from the time value of money and their free use of such funds, at the expense of Plaintiff and Class Members. For example, during the interval of these delayed wage payments, Defendant was free to utilize those funds to purchase goods and services, purchase raw materials to manufacture its products, pay rent or mortgages on its facilities, pay installment payments and purchase fuel for its company-owned vehicles and equipment, pay for marketing and other business expenses, and accrue interest on those funds in its business accounts.

32. Throughout the statutory period, Defendant has employed individuals who have worked for Defendant in the State of New York in hourly-paid positions including, but not limited to, machine operators, forklift operators, factory workers, porters, set-up technicians, technicians, and packaging inspectors who have spent more over 25% of their working hours worked performing physical tasks such as lifting, climbing, bending, and moving or carrying heavy materials, and remaining on their feet to complete their duties.

33. Throughout the statutory period, Defendant has employed machine operators who are responsible for bringing raw material to the production line, assembling and disassembling machines, putting product and components in the machine. The duties of a machine operator require reaching with arms and using hands and fingers to handle or feel objects and tools;

stooping, kneeling, crouching, standing, bending, climbing stairs and ladders, and lifting, carrying and moving heavy materials weighing up to 50 pounds.

34. Throughout the statutory period, Defendant has employed forklift operators who are responsible for operating a forklift to move, locate, relocate, stack and count materials; stacking skids or pallets; and pulling and preparing product for shipment. The duties of the forklift operator require the lifting, moving or carrying heavy materials weighing up to 40 pounds and prolonged standing.

35. Throughout the statutory period, Defendant has employed factory workers who are responsible for operating machinery, engaging in the manufacture of Defendant's pharmaceutical products, filling capsules of pharmaceutical products, lifting, transporting, and then installing heavy equipment into Defendant's machinery to manufacture Defendant's pharmaceutical products, lifting, transporting, and then filling Defendant's machinery with materials necessary to manufacture Defendant's pharmaceutical products, using tools and equipment to transport and install such equipment or materials, lifting and loading materials into the hopper of Defendant's machinery to manufacture pharmaceutical products, lifting and transporting Defendant's manufactured pharmaceutical products to areas for packaging, filling boxes and other containers with Defendant's pharmaceutical products, frequently lifting and transporting heavy boxes, packages and other containers of pharmaceutical products, stacking boxes or other containers of packaged pharmaceutical products for shipment, preparing pallets of packaged pharmaceutical products for shipment, disposing of unused or rejected pharmaceutical products, and cleaning the premises and machinery. The duties of the factory worker require bending, lifting, walking, kneeling, reaching, pushing, carrying, and standing for prolonged periods of time.

36. Throughout the statutory period, Defendant has employed porters who are responsible for cleaning windows, walls, light fixtures, and ceilings; mopping, sweeping, vacuuming, scrubbing, stripping and waxing floors using industrial vacuum cleaner and/or buffing machines; moving cabinets, boxes, furniture, crates and equipment to clean areas; emptying and taking out trash to compactor or dumpsters; painting facilities and replacing floor tiles; sweeping walks, clearing leaves, removing snow or performing other seasonal tasks; and organizing the stockroom and storage areas. The duties of the porter require lifting, pushing, moving, or carrying heavy materials weighing up to 50 pounds and prolonged standing.

37. Throughout the statutory period, Defendant has employed technicians who set up various packaging equipment before and during a job run. The duties of the technicians require prolonged standing, lifting, climbing, bending, and moving or carrying heavy materials.

38. Throughout the statutory period, Defendant has employed packaging inspectors who are responsible for monitoring packaging, inspecting packaging lines and equipment, and inspecting product prior to shipment. The duties of the packaging inspector require prolonged standing, lifting, climbing, bending, and moving or carrying heavy materials.

39. The individuals who have worked for Defendant as machine operators, forklift operators, factory workers, porters, set-up technicians, technicians, and packaging inspectors in the State of New York are "manual workers" within the meaning of NYLL § 190(4).

40. Defendant's failure to timely pay wages earned caused Plaintiff and the Class to suffer the same or similar harms.

41. Defendant treated and paid Plaintiff and Class Members in the same or similar manner.

## THE FLSA COLLECTIVE ACTION

42. Plaintiff seeks to proceed as a collective action with regards to the First Claim for Relief, pursuant to 29 U.S.C. § 216(b) on behalf of herself, individually, and the FLSA Collective.

43. At any given time, Defendant employs over 100 individuals in hourly-paid positions including, but not limited to, machine operators, forklift operators, factory workers, porters, set-up technicians, technicians, and packaging inspectors.

44. Upon information and belief, there are approximately more than 200 current and former similarly situated employees in the FLSA Collective.

45. Plaintiff represents other employees and is acting on behalf of Defendant's current and former employees' interests as well as her own interests in bringing this action.

46. The FLSA Collective is readily identifiable and locatable through Defendant's records. The FLSA Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collectives, who have been unlawfully deprived of timely wages in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## CLASS ACTION ALLEGATIONS

47. Plaintiff brings this action on this action on her behalf, individually, and as a class action, pursuant Rule 23(a) and (b), on behalf of the Class.

48. The persons in the Class are so numerous that joinder of all members is impracticable. Although, the precise number of such persons is unknown, and facts on which the calculation of that number can be based are presently within the sole control of Defendant.

49. Upon information and belief, the size of the Class exceeds 100. This case is properly maintainable as a class action under Rule 23(b)(3). There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members of Class, including but not limited to whether Defendant failed to pay timely wages to Plaintiff and the Class in violation of and within the meaning of the N.Y. Lab. Law § 191(1)(a); whether Defendant acted in good faith when failing to pay Plaintiff and the Class timely; and the nature and extent of class-wide injury and the measure of damages for those injuries. Plaintiff will fairly and adequately protect the interests of the Class and has no interests antagonistic to the class.

50. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.

51. Plaintiff is represented by attorneys who are experienced and competent in both class litigation and employment litigation.

52. Plaintiff and the Class have been equally affected and harmed by Defendant's failure to pay proper wages.

53. Moreover, many members of the Class still employed by Defendants may be reluctant to raise individual claims for fear of direct or indirect retaliation. Former employees may be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in this Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing those risks.

54. Defendant acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

55. Plaintiff's claims are typical of those of the Class. Plaintiff and the Class were subjected to Defendant's policies, practices, programs, procedures, protocols and plans alleged herein concerning the failure to pay timely wages.

56. Plaintiff's job duties and manner of payment are typical of those of the Class. Plaintiff and the Class spent over 25% of their working time performing physical tasks including, but not limited to, moving, lifting, and carrying materials, supplies, and equipment; and remaining on their feet for prolonged periods to complete their duties.

57. Plaintiff and the Class were paid every other week.

58. Defendant applied their biweekly payment policy to the Class uniformly as part of its corporate-wide pay policies and practices.

59. Plaintiff and the Class were uniformly deprived of the time value of their earned wages during periods in which payment was illegally delayed.

60. Plaintiff and the Class were uniformly deprived of the ability to use their earned wages – money to which they were legally entitled – during periods in which payment was illegally delayed.

61. Plaintiff and the Class lost the time value of their earned wages. Defendant, however, benefited from the delayed payments. That is, among other things, Defendants reduced its administrative costs by paying less frequently than required and use the extra money they were holding onto as they pleased until payroll was cut.

62. A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant. The Class has been damaged and harmed, and are

entitled to recovery as a result of Defendant's common and uniform policies, practices, and procedures. Although the relative damages suffered by individual members of the Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

### *Violations of the FMLA and NYSHRL*

63. Plaintiff is the primary caregiver for her daughter, age 4, who suffers from intellectual disabilities and developmental delays caused by Down's Syndrome, as well as from impairments of her respiratory system.

64. Plaintiff exercised her right to a two-week leave of absence under the FMLA to care for her daughter who underwent a surgical procedure to remove enlarged adenoids in or about September 2022, whereby her daughter suffered a serious health condition under the FMLA.

65. Defendant was aware that Plaintiff experienced an FMLA-qualifying event due to her daughter's serious health condition.

66. In or about October 2022, Plaintiff informed Defendant that she was pregnant and expected to deliver her baby on or about May 13, 2023, which constitutes a serious health condition under the FMLA. Defendant was aware that Plaintiff intended to take maternity leave upon the birth of her child.

67. The birth of Plaintiff's child is an FMLA-qualifying event and Plaintiff would have been eligible to take leave under the FMLA.

68. On December 8, 2022, Defendant terminated Plaintiff's employment because Plaintiff exercised her rights under the FMLA to provide care for her daughter due to her daughter's serious health condition constituting retaliation under the FMLA.

69. On December 8, 2022, Defendant terminated Plaintiff's employment in order to deny benefits to which Plaintiff would have been entitled under the FMLA and thereby interfered with the exercise of Plaintiff's rights under the FMLA by terminating her employment because of her anticipated need for leave in connection with the birth of her child.

70. Defendant's action was taken in conscious disregard of Plaintiff's rights.

71. Defendant discriminated against Plaintiff in the terms and conditions of her employment because of pregnancy by terminating Plaintiff's employment.

72. Defendant discriminated against Plaintiff due to her relationship with her daughter, an individual with a disability, based on unfounded assumptions about the need to care for a disabled person.

73. Defendant discriminated against Plaintiff by terminating Plaintiff's employment based on its concern that Plaintiff's daughter's disability could interfere with her job performance.

74. Defendant discriminated against Plaintiff due to her relationship with her daughter, an individual with a disability, based on an unfounded belief that Plaintiff's need to care for her daughter would have a negative impact on her work attendance or performance.

75 Defendant terminated Plaintiff's employment because she is a caregiver with children at home and its unfounded belief that someone with children or caring for a relative with a disability will not be a "reliable" employee.

76. Defendant's decision to terminate Plaintiff's employment was based on fears that Plaintiff will be inattentive at work and/or unreliable due to the disability of her minor child.

77. As a result of Defendants' discrimination, Plaintiff has suffered, and will continue to suffer, loss of income and employment-related benefits, termination of employment, loss of opportunity for advancement and promotion, emotional pain and suffering, mental anguish, embarrassment and humiliation.

## FIRST CLAIM FOR RELIEF
## (FLSA FAILURE TO PAY TIMELY WAGES
## ON BEHALF OF PLAINTIFF AND THE FLSA COLLECTIVE)

78. Plaintiff alleges and incorporates by reference all allegations in all preceding paragraphs.

79. Plaintiff and members of the FLSA Collective are current and former employees entitled to on-time payment of their statutorily required wages after the workweek ends. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945).

80. Defendant, however, withheld Plaintiffs and the FLSA Collective's federally mandated wages for about 11 days after the conclusion of the workweek.

81. This delay was pursuant to a companywide policy and practice to pay Defendant's employees on a biweekly basis.

82. Such a delay is inherently unreasonable, as Defendant were required by New York law to pay Plaintiff and the FLSA Collective within seven days after the end of the workweek.

83. Defendant failed to make a good faith effort to comply with the FLSA with respect to compensating Plaintiff and the FLSA Collective.

84. Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

85. As a consequence of the willful delay of wages, alleged above, Plaintiffs and the FLSA Collective incurred damages and seek to recover interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF
### (NYLL FAILURE TO PAY TIMELY WAGES
### ON BEHALF OF PLAINTIFF AND THE CLASS)

86. Plaintiff alleges and incorporates by reference all allegations in all preceding paragraphs.

87. Plaintiff and Class Members are manual workers as defined by NYLL § 190(4).

88. Defendant was required to pay the Plaintiff and Class Members on a weekly basis, and no later than seven days after the end of the workweek in which the wages were earned.

89. Defendant failed to pay Plaintiff and Class Members on a weekly basis and instead paid Plaintiff and Class Members bi-weekly or semi-monthly in violation of NYLL § 191.

90. Every time that Defendant failed to pay Plaintiff and Class Members their wages earned within seven days of the end of the workweek, Defendant deprived them of the use of money to which they were legally entitled.

91. As a result of Defendant's failure to timely pay their wages, Plaintiff and Class Members lost the time value of money.

92. Plaintiff and Class Members are entitled to damages equal to the total of the delayed wages and reasonable attorney's fees and costs.

### THIRD CLAIM FOR RELIEF
### FMLA RETALIATION

93. Plaintiff realleges and incorporates by reference the preceding allegations as if fully set forth herein.

94. Defendant was aware that Plaintiff engaged in protected activity under the FMLA.

95. By the aforementioned actions, Defendants retaliated against Plaintiff for exercising her rights under the FMLA in violation of 29 U.S.C. § 2615.

96. Defendant's violation of the FMLA was willful and intentional.

97. As a result of Defendants' retaliatory conduct, Plaintiff has suffered loss of income and benefits, termination of employment and loss of opportunity for advancement and promotion.

98. As a result of Defendants' retaliatory conduct, Plaintiff is entitled to an award of liquidated damages, attorneys' fees, costs of this action and interest as permitted by law.

99. Defendant retaliated against Plaintiff by engaging in willful, wanton, and/or reckless conduct and/or conduct in conscious disregard of Plaintiff's rights and Plaintiff is therefore entitled to an award of punitive damages.

### FOURTH CLAIM FOR RELIEF
### FMLA INTERFERENCE

100. Plaintiff realleges and incorporates by reference the preceding allegations as if fully set forth herein.

101. Plaintiff informed Defendant that she was pregnant and expected to give birth to her child on or about May 13, 2023.

102. Plaintiff gave notice to Defendant of her intention to take leave after the birth of her child on or about May 13, 2022.

103. The birth of Plaintiff's child was an FMLA-qualifying event and Plaintiff would have been eligible to take leave under the FMLA.

104. Defendant interfered with Plaintiff's rights to take statutorily protected leave under the FMLA and terminated Plaintiff's employment in order to deny benefits to which Plaintiff would have been entitled under the FMLA.

105. Defendant's violation of the FMLA was willful and intentional.

106. As a result of Defendant's unlawful conduct, Plaintiff has suffered loss of income and benefits, termination of employment and loss of opportunity for advancement and promotion.

107. As a result of Defendants' unlawful conduct, Plaintiff is entitled to an award of liquidated damages, attorneys' fees, costs of this action and interest as permitted by law.

108. Defendant interfered with Plaintiff's rights by engaging in willful, wanton, and/or reckless conduct and/or conduct in conscious disregard of Plaintiff's rights and Plaintiff is therefore entitled to an award of punitive damages.

## FIFTH CLAIM FOR RELIEF
## PREGNANCY, GENDER AND FAMILIAL STATUS DISCRIMINATION

109. Plaintiff realleges and incorporates by reference the preceding allegations as if fully set forth herein.

110. By the acts and practices described above, Defendant discriminated against Plaintiff in the terms and conditions of her employment on the basis of pregnancy, her gender and her familial status in violation of the NYSHRL.

111. As a result of Defendant's discriminatory conduct, Plaintiff has suffered loss of income and benefits, termination of employment, loss of opportunity for advancement and promotion, emotional pain and suffering, mental anguish, embarrassment and humiliation.

112. As a result of Defendants' discriminatory conduct, Plaintiff is entitled to an award of attorneys' fees, costs of this action and interest as permitted by law.

113. Defendant discriminated against Plaintiff by engaging in willful, wanton, and/or reckless conduct and/or conduct in conscious disregard of Plaintiff's rights and Plaintiff is therefore entitled to an award of punitive damages.

## SIXTH CLAIM FOR RELIEF
## DISABILITY DISCRIMINATION

114. Plaintiff realleges and incorporates by reference the preceding allegations as if fully set forth herein.

115. By the acts and practices described above, Defendant discriminated against Plaintiff in the terms and conditions of her employment on the basis of disability in violation of the NYSHRL.

116. As a result of Defendants' discriminatory conduct, Plaintiff has suffered loss of income and benefits, termination of employment, loss of opportunity for advancement and promotion, emotional pain and suffering, mental anguish, embarrassment and humiliation.

117. As a result of Defendants' discriminatory conduct, Plaintiff is entitled to an award of attorneys' fees, costs of this action and interest as permitted by law.

118. Defendant discriminated against Plaintiff by engaging in willful, wanton, and/or reckless conduct and/or conduct in conscious disregard of Plaintiff's rights and Plaintiff is therefore entitled to an award of punitive damages.

## DEMAND FOR A JURY TRIAL

119. Plaintiff realleges and incorporates by reference the preceding allegations as if fully set forth herein.

120. Plaintiff demands a trial by jury as to all issues in the above matter.

**WHEREFORE**, Plaintiff demands judgment against Defendants and that the Court enter an award in favor of Plaintiff:

(i) Certification of a Collective Action pursuant to 29 U.S.C. § 216(b);

(ii) Certification of a Class Action pursuant to Fed. R. Civ. P. 23;

(iii) Designation of Plaintiff as representative of the Class and counsel of record as Class Counsel;

(iv) Issuance of an order restraining Defendant from any retaliation against Plaintiff, FLSA Collective Members and Class Members for participation in any form in this litigation;

(v) Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA, NYLL and the supporting N.Y.S DOL Regulations;

(vi) Damages pursuant to the FLSA and NYLL § 198;

(vii) Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FMLA and the NYSHRL;

(viii) Damages in the form of back pay with interest;

(ix) Reinstatement of Plaintiff to an equivalent position;

(x) Front pay, in lieu of reinstatement;

(xi) Compensatory damages for emotional pain and suffering, mental anguish, embarrassment and humiliation;

(xii) Liquidated damages;

(xiii) Punitive damages;

(xiv) Pre-judgment and post-judgment interest as permitted by law;

(xv) All attorneys' fees incurred in prosecuting these claims;

(xvi) All costs incurred in prosecuting these claims; and

(xvii) Such other and further relief as this Court may deem just and proper.

Dated: Hauppauge, New York
      January 23, 2023

                                    LAW OFFICE OF PETER A. ROMERO

                    By:    */s Peter A. Romero*
                                    _____
                                    Peter A. Romero
                                    490 Wheeler Road, Suite 250
                                    Hauppauge, New York 11788
                                    Tel. (631) 257-5588
                                    Promero@RomeroLawNY.com

                                    *Attorney for Plaintiff*